251 N.J. Super. 443 (1991)
598 A.2d 911
JOHN FANOLI AND MOLLI FANOLI, HIS WIFE, PLAINTIFFS-RESPONDENTS, CROSS-APPELLANTS,
v.
SEA-LAND SERVICES, INC., DEFENDANT-APPELLANT, CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 1991.
Decided October 30, 1991.
*444 Before Judges BILDER, STERN and KEEFE.
Joseph T. Stearns argued the cause for appellant, cross-respondent (Kenny & Stearns, attorneys; Joseph T. Stearns, of counsel and on the brief).
Richard M. Winograd argued the cause for respondents, cross-appellants (Joseph A. Ginarte, attorney; Richard M. Winograd, of counsel and on the brief).
The opinion of the court was delivered by BILDER, J.A.D.
*445 This is a personal injury case arising under the Longshore and Harborworkers' Compensation Act, 33 U.S.C.A. 901 et seq. Defendant Sea-Land Services, Inc. appeals from a judgment entered in favor of plaintiffs following a jury verdict which found defendant negligent, the injured plaintiff, John Fanoli (hereinafter "plaintiff"), free of negligence and awarded damages of $900,000 to John and $350,000 to his wife, plaintiff Molli Fanoli. The judgment included prejudgment interest of $176,655.26. Plaintiffs cross-appeal the reduction of Molli's award to $50,000.
Sea-Land operates sea-going vessels from a terminal facility at Port Elizabeth which it also owns and operates. To furnish relief to members of the crews while ships are at Port Elizabeth, Sea-Land maintains shore gangs which relieve shore leave crew members and carry out such maintenance and other duties as they are directed to do on board ship. Plaintiff was employed as a member of a shore gang.
On the morning of June 27, 1986 plaintiff was injured while attempting to board the S.S. Chesapeake Trader, a barge owned by Sea-Land. Access to the barge was provided by a straight aluminum ladder which had been laid against the side of the barge from the dock below. The accident occurred when the ladder slipped to the side from its position at the top edge of the barge causing plaintiff and the ladder to fall to the pilings below. Plaintiff collected compensation from Sea-Land as his employer pursuant to § 904 of the Act and also instituted the instant negligence action against Sea-Land as owner of the barge pursuant to § 905(b) of the Act. Plaintiff does not deny defendant is entitled to a credit for the compensation payments pursuant to § 933 of the Act. The judgment appealed from gives such a credit.
In its brief, defendant described the appeal as involving "exclusively" issues of law and statutory interpretation; alleges the issues are controlled exclusively by federal law, more *446 particularly the Act; and concedes that plaintiff was a harbor worker within the meaning of the Act. Prior to the trial, before the summations, defendant abandoned a contention that plaintiffs' claim was barred by the negligence of fellow servants.
On appeal, defendant contends the Act bars this negligence suit against plaintiff's employer; that there is no right to prejudgment interest with respect to this federally created cause; that there can be no recovery for loss of society with respect to this federally created cause; and that plaintiffs had no right to a jury trial.

I.
An understanding of the Act is a necessary foundation to an understanding of defendant's contentions.
As its title shows, the Act is a workers' compensation act. It substitutes no-fault compensation, § 904,[1] for a right to sue, § 905(a).[2] On appeal, defendant contends the exclusivity provisions *447 of § 905(a), which make compensation an employee's exclusive remedy against his employer, bars plaintiff's claim. Plaintiff, on his part, contends the claim is authorized by § 905(b) which permits an employee to sue a vessel owner (here, the owner of the barge) for negligence.
On this score both parties seem to agree that the real legal issue is whether § 905(b) permits an employee to sue the vessel's owner when that owner is also the employee's employer.
§ 905(b) in relevant part provides:
In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person ... may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel.
Section 905(b) did not exist prior to 1972. In that year, in response to what the House Committee on Education and Labor described as a long overdue need for change, House Committee Report to the 1972 Amendments, H.R.Rep. No. 1441, 92d Cong, 2d Sess., reprinted in [1972] U.S.Code Cong. & Admin.News, p. 4698 et seq. at 4698, the Act was amended so as to increase the benefits under the Act and eliminate the absolute liability which attached to shipowners under the then existing doctrine of seaworthiness. We resist the temptation to recite the history of the Act, Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), Ryan Stevedoring Co., Inc. v. Pan-Atlantic *448 S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and the 1972 amendment, all of which has been thoroughly set forth at length in the cases to be cited, and limit ourselves to noting that section 905(b) substituted a negligence concept for the strict liability concept of seaworthiness with respect to claims against vessels and insulated the vessels against claims by longshoremen where the injury was caused by another longshoreman, i.e. the vessel is no longer liable for injuries which are really the fault of the stevedore. H.R.Rep. No. 1441, supra.[3]
Prior to the 1972 amendment as a result of the Supreme Court decisions in Sieracki (vessels liable as third parties for injuries suffered by longshoremen as a result of unseaworthiness, a no-fault liability, even if the condition was created by the stevedore) and Ryan Stevedoring Co. (vessel liable under Sieracki doctrine could obtain indemnity from the stevedore), the exclusivity provision of Section 905(a) (then the entire section 905) was rendered largely nugatory because the stevedore found itself liable to its employee for compensation benefits under section 933 and again for admiralty seaworthiness action awards as a result of its indemnification liability to the vessel. And in 1963 in Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963) the Supreme Court held that such admiralty actions could be brought even when the employer and the vessel owner were the same, i.e. the stevedore owned the vessel.
As already noted the 1972 amendment clearly substituted negligence principles for the absolute liability of the unseaworthiness doctrine and abrogated the Sierecki doctrine. Relevant to this appeal is the question of whether it abrogated the *449 Reed rule.[4] Although presented as novel, we find that the U.S. Supreme Court and three Circuit Courts have held that the Reed rule is still viable and that a person covered by the Act may sue the vessel pursuant to section 905(b) even though the vessel is owned by the injured person's employer. See Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 530-532, 103 S.Ct. 2541, 2547-2548, 76 L.Ed.2d 768 (1983); Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 266, 99 S.Ct. 2753, 2759, 61 L.Ed.2d 521 (1979); Longmire v. Sea Drilling Corp., 610 F.2d 1342 (5th Cir.1980); Napoli v. [Transpacific Carriers, etc.] Hellenic Lines, 536 F.2d 505 (2d Cir.1976); Griffith v. Wheeling Pittsburgh Steel Corporation, 521 F.2d 31 (3rd Cir.1975); also Kerr-McGee Corp. v. Ma-Ju Marine Services, Inc., 830 F.2d 1332, 1338 (5th Cir.1987). In Smith v. M/V Captain Fred, 546 F.2d 119 (5th Cir.1977) the court said, "In this appeal we are asked to decide whether the rule of Reed v. The Yaka survived the passage of the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act" (citations omitted) and answered the question in the affirmative. Id. at 120.
Defendant seeks to distinguish the Supreme Court decisions as well as Napoli and Griffith on the ground that those cases involved longshoreman whereas plaintiff is a harborworker, a non-longshoreman. As the trial judge noted in his oral opinion of July 23, 1990 the language of the statute does not support such a distinction. The first sentence of section 905(b) clearly refers to "person[s] covered by the Act". Plaintiff is acknowledgedly such a person; defendant has made substantial compensation payments to him under the Act. Had Congress intended to mean longshoremen rather than persons covered by the Act, it could easily have said so. Moreover, even if one were to discount those federal cases in which the plaintiff was a *450 longshoreman, there remain opinions from two circuit courts and one district court which uphold a non-longshoreman plaintiff's right to sue the employer-owned vessel. See Longmire v. Sea Drilling Corp., supra; Smith v. M/V Captain Fred, supra; Presley v. Healy Tibbits Const. Co., 646 F. Supp. 203 (D.Md. 1986); also Kerr-McGee Corp. v. Ma-Ju Marine Services, Inc., supra.
Even if one gives the defendant the best of its longshoreman distinction, defendant asks us to ignore the holding of the Circuit Courts that have spoken on this uniquely federal question and to come to a different conclusion. We decline to do so. We decline to do so not only because the reasoned opinions of these knowledgeable courts as well as the views expressed by the U.S. Supreme Court, in at least related matters, persuade us of the correctness of their decisions but also because we believe it is appropriate to defer to the federal courts in this uniquely federal area. Moreover as noted, we are satisfied defendant's longshoreman distinction does not exist and that the question is clearly resolved by the continued existence of the Reed doctrine.
Finally, we note our agreement with the views expressed by the trial judge as to the interpretation of the Act.

II.
Defendant's remaining contentions are without merit.

A.
Defendant's contention that the court erred in awarding prejudgment interest is without merit. The precise argument made by defendant, including its reliance on Monessen Southwestern R. Co. v. Morgan, 486 U.S. 330, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988), was considered and rejected by the Court of Appeal for the Fifth Circuit in Randolph v. Laeisz, 896 F.2d 964, 968-969 (5th Cir.1990) (award of prejudgment interest under Texas law in LHCA action upheld). We are satisfied that *451 the discretionary right to award prejudgment interest is generally recognized, ibid.; also Complaint of Connecticut Nat. Bank, 928 F.2d 39, 42-43 (2d Cir.1991); Barnett v. Sea Land Service, Inc., 875 F.2d 741, 746-747 (9th Cir.1989).

B.
Defendant's contention as to the right of plaintiff's wife to recover damages is also without merit. Section 905(b) preserves a common law cause of action; it does not create one. Moreover, absent a statute-created limitation, courts will not bar the right of a dependent to bring a derivative claim. See Sea-Land Services v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974).
In recognizing the correctness of the propriety of giving rather than withholding the remedy when the latter result is not required by statute-created limitations, id. at 583, 94 S.Ct. at 814, Justice Brennan noted, at 588, 94 S.Ct. at 816:
[I]n any event, our decision is compelled if we are to shape the remedy to comport with the humanitarian policy of the maritime law to show "special solicitude" for those who are injured within its jurisdiction.
Defendant's reliance on Miles v. Apex Marine Corp., 498 U.S. ___, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) is misplaced. The court there held that recovery was statutorily precluded by the Death on the High Seas Act (DOHSA), 46 U.S.C.A.App. 761 et seq. and the Jones Act, 46 U.S.C.A.App. 688 et seq. Id. at ___, 111 S.Ct. at 325-326, 112 L.Ed.2d at 290-291.

C.
As to defendant's contention with respect to the jury trial, it is sufficient to note defendant's concession that "Section 905(b) cases since 1972 have been routinely tried to juries, in both federal and state courts" and that the procedure accords with Fitzgerald v. United States Lines Company, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963).

*452 III.
After the trial, on defendant's motion for a new trial, the trial judge granted a remittitur reducing plaintiff Molli Fanoli's award from $350,000 to $50,000. Molli accepted the remittitur but by virtue of defendant's appeal is entitled to cross-appeal that reduction. See Mulkerin v. Somerset Tire Service, Inc., 110 N.J. Super. 173, 177, 264 A.2d 748 (App.Div. 1970).
The rule is well established that a trial judge should not disturb a damage award unless it is "so disproportionate to the injury and resulting disability shown as to shock [the] conscience." See Ryan v. KDI Sylvan Pools Inc., 121 N.J. 276, 297, 579 A.2d 1241 (1990); Baxter v. Fairmont Food Co., 74 N.J. 588, 596, 379 A.2d 225 (1977).
From a review of the record which discloses substantial harm visited on Molli by her husband's injuries, we are not satisfied the award was so large as to be manifestly excessive. We are not persuaded that the reasons given by the trial judge in his oral opinion of July 23, 1990 justify such a conclusion. See Baxter v. Fairmont Food Co., supra at 601, 379 A.2d 225.
The judgment in favor of John Fanoli is affirmed. The order reducing the award to Molli Fanoli is reversed and the matter remanded for entry of a judgment for the full amount of the jury award together with pre-judgment interest to be calculated in accordance with the rules of court.
NOTES
[1] Section 904 provides:

(a) Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907, 908, and 909 of this title. In the case of an employer who is a subcontractor, only if such subcontractor fails to secure the payment of compensation shall the contractor be liable for and be required to secure the payment of compensation. A subcontractor shall not be deemed to have failed to secure the payment of compensation if the contractor has provided insurance for such compensation for the benefit of the subcontractor.
(b) Compensation shall be payable irrespective of fault as a cause for the injury.
[2] Section 905(a) provides:

The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, any anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee. For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 904 of this title.
[3] By a 1984 amendment, irrelevant to the appeal, immunity was conferred on shipyards by limitations on shipbuilders and repairers. See Ducrepont v. Baton Rouge Marine Enterprises, Inc. 666 F. Supp. 882, 887 (E.D.La. 1987).
[4] Defendant's brief seems to argue inter alia that the words "vessel as a third party" shows a legislative intent to limit section 905(b) claims to truly third party actions. This argument is subsumed in the Reed issue.