**Jacinto G. GUILLES, Plaintiff,**

v.

**SEA–LAND SERVICE, INC., Defendant.**

No. 90 Civ. 3371 (SS).

United States District Court,
S.D. New York.

April 15, 1993.

Tabak & Mellusi, New York City by Jacob Shisha, for plaintiff.

Kenny & Stearns, New York City by Joseph T. Stearns, for defendant.

## AMENDED FINDINGS OF FACTS, CONCLUSIONS OF LAW, ORDER AND OPINION

SOTOMAYOR, District Judge.

Plaintiff Jacinto G. Guilles ("Guilles") is a retired shoregang employee of defendant Sea–Land Service, Inc. ("Sea–Land") who seeks damages under the Longshore and Harbor Workers' Compensation Act of 1927, 44 Stat. 1426, as amended, 33 U.S.C. § 901, *et seq.* (1990 ed., and West Supp.1992) (hereinafter the "LHWCA" or the "Act") for an injury sustained when he fell from the main gangplank of a vessel owned and operated by Sea–Land. The parties have stipulated to the negligence of the vessel and the amount of Guilles' damages. The remaining issue before the Court is whether Guilles, a harbor worker who is not a longshore person, is permitted, under § 905(b) of the LHWCA, to bring a negligence action against the owner of a vessel who is also his employer. For the reasons set forth below, the Court concludes that Guilles is entitled to bring such an action and enters judgment in his favor.

### Procedural Background

Guilles originally brought this action as a seaman for the negligence of the vessel under the Jones Act, 38 Stat. 1185, 46 U.S.C.App. § 688, *et seq.* (1990 ed., and West Supp.1992) ("Jones Act"). In the alternative, Guilles claimed the vessel was negligent and that he was entitled to recover for said negligence under § 905(b) of the LHWCA.

On December 9, 1991, Sea–Land moved for summary judgment, claiming (1) that Guilles was not a seaman entitled to bring suit under the Jones Act, and (2) that Guilles was limited to worker compensation benefits under § 904 of the LHWCA and was not permitted, as a harbor worker who was not a longshore person, to bring a negligence suit under § 905(b) of the LHWCA. Guilles opposed the motion.

Oral argument was held on March 27, 1992. By Stipulation dated June 1, 1992, the parties changed the focus of the case by agreeing that Guilles was not a seaman under the Jones Act but that he was entitled, as a harbor worker, to workers compensation benefits, which he received, under § 904 of the LHWCA. Sea–Land, however, reserved its right in the Stipulation to maintain the defense that Guilles, as a non-longshore harbor worker, was not entitled to bring a tort action under § 905(b) of the LHWCA. By Order dated June 11, 1992, Judge John E. Sprizzo denied Sea–Land's summary judgment motion as it related to the LHWCA claim and set trial for December 21, 1992.

On October 2, 1992, the case was transferred to Judge Sonia Sotomayor who rescheduled the trial to February 1, 1992. On January 22, 1993, Sea–Land sought leave to re-file its summary judgment motion on the identical grounds argued before Judge Sprizzo. Guilles opposed Sea–Land's request, arguing that Judge Sprizzo had already rejected the same claims. After reviewing the summary judgment papers submitted to Judge Sprizzo and the letter submissions to it, this Court concurred with Judge Sprizzo's opinion and denied Sea–Land's request.

Following a bench trial held on February 1 and 2, 1993, during which all witnesses for both parties testified (except for Guilles' doctor), the parties stipulated to the following facts and conclusions of law which are adopted by the Court, as supported by the evidence presented at trial and by law.[1]

1. *See Sanford's Estate v. Commissioner of Internal Revenue,* 308 U.S. 39, 51, 60 S.Ct. 51, 59, 84

## AGREED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

For the sake of clarity in understanding the stipulations of the parties, the Court explains that Guilles was a shoregang employee who functioned as a relief cook on Sea–Land vessels when they berthed in the New York/New Jersey area. On April 22, 1988, as he attempted to board the M/V Sea–Land Integrity to commence working for the day, Guilles fell from the main gangplank and injured his ankle. The testimony at trial demonstrated that Sea–Land knew that the main gangplank was too short to reach the dock at a safe climbing angle. The following are the parties' stipulated facts:

1. On April 22, 1988, Jacinto G. Guilles was employed by defendant Sea–Land as a member of the shoregang and, as such, was covered for purposes of entitlement to compensation benefits of the LHWCA, both by virtue of his status and situs of injury. *Northeast Marine Terminal Co., Inc. v. Caputo*, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977); *Director, OWCPU v. Perini North River Assoc.*, 459 U.S. 297, ·103 S.Ct. 634, 74 L.Ed.2d 465 (1983).

2. Plaintiff did not engage in providing stevedoring services to the vessel, shipbuilding, repairing or breaking services.

3. Plaintiff, on April 22, 1988, sustained "an injury", which occurred as a result of the ·"negligence of the vessel" within the meaning of § 905(b) of the Act, on the main gangway or so-called "accommodation ladder" of the vessel SEA LAND INTEGRITY.

4. As a result of said injury, plaintiff sustained damages in the amount of $20,000.00 over and above the $10,533.78 he received in worker compensation payments, and $3,382.57 he received under the LHWCA as compensation benefits for his medical care and treatment. Thus, the total amount of damages suffered by Guilles is $33,916.35, of which $13,916.35 is subject to a compensation lien.

5. This Court has jurisdiction over plaintiff's claims, pursuant to 28 U.S.C. § 1333, because the injury occurred on the navigable waters of the United States. *Victory Carriers v. Law*, 404 U.S. 202, 207, 92 S.Ct. 418, 422, 30 L.Ed.2d 383 (1971).

The parties did not stipulate about the applicability of § 905(b) of the LHWCA to Guilles' claim.

## ADDITIONAL CONCLUSIONS OF LAW AND DISCUSSION

In 1927, Congress passed the LHWCA and created a worker compensation scheme for longshore persons and harbor workers. The exclusive worker compensation remedy was (and is still found today) in § 904 of the LHWCA: "Every employer shall be liable for and shall secure the payment to his employees of the compensation scheme payable under sections 907, 908, and 909 of this title." 33 U.S.C.A. § 904 (1990 ed., and West Supp. 1992). Section 905 made clear that the only remedy under the statute was the compensation scheme of § 904: "The liability of an employer prescribed in § 904 of this title shall be exclusive and in place of all other liability of such employer to the employee . . . ." 33 U.S.C. § 905 (1970 ed., West Supp.1973). In 1972, § 904 was retained without change but the exclusive liability section originally found in § 905 was re-numbered as § 905(a) and a subsection (b) created.

In its present form, § 905(b) states as follows:[2]

### (b) Negligence of vessel

Prior to the 1984 amendments, the third sentence read as follows:

> "[i]f such person was employed by the vessel to provide shipbuilding or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing shipbuilding or repair services to the vessel."

*See,* Pub.L.98–426, § 5(a)(1).

---

L.Ed. 20 (1939); *Sinicropi v. Milone*, 915 F.2d 66, 68 (2d Cir.1990); *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984). Although this Court harbors some doubt that a relief cook is covered by the LHWCA instead of the Jones Act, it does not find the parties' stipulation clearly erroneous as a matter of law and therefore adopts the same.

2. The language of § 905(b) has remained intact with the notable exception of its third sentence.

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

33 U.S.C.A. § 905(b), as amended, (1990 ed., West Supp.1992).

Sea–Land maintains that § 904 is the exclusive remedy a worker, who is not a longshore person, has against its employer and that § 905(b) permits only longshore persons, and not harbor workers like Guilles, to bring negligence suits against employers who are also vessel owners. Despite numerous and lengthy submissions by Sea–Land concerning its position, the Court has a difficult time explaining Sea–Land's reasoning. This difficulty is caused in part by the turgidity of Sea–Land's submissions and in part by Sea–Land's need to weave its argument around seemingly contrary case-law precedent.[3]

After extensive study of Sea–Land submissions and after hearing oral argument, the Court has concluded that what Sea–Land is trying to say is that the legislative scheme of the LHWCA and the legislative history of § 905(b) make it clear that Congress in the 1972 Amendments did not contemplate permitting anyone other than longshore persons and ship builders, repairers and breakers to bring negligence actions against employers who were also vessel owners. Because of the second sentence of § 905(b) relating to persons performing stevedoring services, the Supreme Court has interpreted § 905(b) as permitting longshore persons to bring negligence actions against their employers when those employers are vessel owners. *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 532, 103 S.Ct. 2541, 2548, 76 L.Ed.2d 768 (1983). Sea–Land must accept this interpretation, but it believes that to give meaning to the phrase a "vessel as a third party in accordance with the provisions of section

**3.** Two courts have addressed the issue presented by Sea–Land and both have concluded that non-longshore persons are entitled to bring tort actions against their employers under § 905(b) of the LHWCA: *Presley v. Healy Tibbits Const. Co.*, 646 F.Supp. 203 (D.Md.1986) and *Fanoli v. Sea-Land Services, Inc.*, 251 N.J.Super. 443, 598 A.2d 911 (Sup.Ct.App.Div., N.J.1991); *cert. denied*, —— U.S. ——, 112 S.Ct. 3031, 120 L.Ed.2d 901 (1992). The *Presley* and *Fanoli* holdings on this issue were mere dicta because both courts concluded that the injured employees bringing the suits were longshore persons. Moreover, both cases inappropriately relied upon general language in certain Fifth Circuit cases which suggest that non-longshore persons are permitted to sue their employers under § 905(b). *E.g. Kerr-McGee Corp. v. Ma–Ju Marine Services, Inc.*, 830 F.2d 1332, 1335 (5th Cir.1987); *Longmire v. Sea*

*Drilling Corp.*, 610 F.2d 1342, 1348–49 (5th Cir. 1980). These cases, however, involved injured workers covered under the LHWCA by § 4(b) of the Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1333(b) (1990 ed., West Supp.1992) which mandates that such workers be treated like longshore persons. *Id.* Similarly, to the extent that *Fanoli* and *Presley* relied upon *Smith v. M/V Captain Fred*, 546 F.2d 119 (5th Cir.1977), their reliance was misplaced because the sole issue decided by *Captain Fred* was that a ship repairer could sue a vessel owner—a result no longer possible after the 1984 amendments to § 905(b). Finally, *Presley*'s reliance on *Smith v. Eastern Seaboard Pile Driving, Inc.*, 604 F.2d 789 (2d Cir.1979) was not warranted because in *Smith* the court found that an injured leverman aboard a vessel owned by defendant was a longshore person. *Id.*, at 795–96.

933" in the first sentence of § 905(b), the right of § 905(b) to sue vessel owners who are also employers must be limited to longshore persons and not extended to harbor workers, like Guilles, who are not longshore persons.

Although Sea–Land's argument as understood by the Court is not wholly illogical, it is at best strained. The manner in which Sea–Land would like this Court to distinguish the rights of other harbor workers who are not longshore workers under § 905(b) is not supported by Supreme Court precedent or the language of the section itself. Well settled principles of statutory construction and applicable case law ineluctably lead to the conclusion that a harbor worker cook who receives worker compensation benefits under § 904 of the Act, may also bring a direct negligence action under § 905(b) against a vessel owner who is also its employer.

## A. The Longshore and Harbor Worker's Compensation Act

A brief summary of the LHWCA's history is useful to understand Sea–Land's tortuous interpretation of the Act.

The LHWCA was signed into law in 1927, following the Supreme Court decisions in *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), *Washington v. W.C. Dawson & Co.*, 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646 (1924), and *Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920), where the Supreme Court held that states were without constitutional authority to provide worker compensation benefits to longshore persons injured on a gangplank between the ship and the pier, *see Jensen, supra*, and where the Court barred, as an unlawful delegation of legislative power, Congress' attempt to authorize states to expand their worker compensation coverage seaward from the pier. *See, Dawson, supra*, and *Stewart, supra; see generally, Northeast Marine Terminal Co., Inc. v. Caputo*, 432 U.S. 249, 256–57, 97 S.Ct. 2348, 2354, 53 L.Ed.2d 320 (1977).

Congress enacted the LHWCA to serve as the exclusive remedy for longshore persons and harbor workers injured on navigable waters, i.e., those whose injuries occurred on the gangplank or at any other point "seaward" of the gangplank. *Caputo*, 432 U.S. at 258–59, 97 S.Ct. at 2354. The Act created a worker compensation scheme that provided coverage to injured employees without regard to employer liability. *Jones & Laughlin Steel Corporation*, 462 U.S. 523, 528, 103 S.Ct. 2541, 2546, 76 L.Ed.2d 768 (1983). Coverage under the Act was determined by reference to the location, *i.e.* on navigable waters, where the injury took place or, as the courts would later referred to it, the "situs test." *Caputo*, 432 U.S. at 267–68, 97 S.Ct. at 2359–60.

This situs approach afforded compensation only to those longshore persons who were fortunate enough to be on the sea-side of the gangplank, *see Narcirema Operating Co. v. Johnson*, 396 U.S. 212, 218–20, 90 S.Ct. 347, 351–53, 24 L.Ed.2d 371 (1969) (coverage of the LHWCA ends at the water's edge), while abandoning those on the land side of the gangplank to what was then perceived as inadequate state compensation systems. *Caputo*, 432 U.S. at 262–63, 97 S.Ct. at 2356–57.

As dissatisfaction grew with the limited sea-ward coverage of the LHWCA, the Supreme Court was expanding the remedies available to employees covered by the Act.

The first step was taken by *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), where the Supreme Court recognized the right of an individual performing the traditional stevedoring work of a longshore person to bring an action for unseaworthiness against a vessel owner as a third person when the vessel owner did not employ the longshore person directly but contracted with an independent stevedoring company that employed the longshore person. This case was followed by *Ryan Stevedoring Co. v. Pan–Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), where the Supreme Court held that an independent stevedore company which employed a longshore person and paid workers compensation for an injury to that employee could still be sued by a vessel owner for indemnification of the damages paid to the employee for the unseaworthiness of the vessel caused by the services provided by the

stevedoring company. This result was consistent with the interpretation of many state courts that their worker compensation laws did not bar third party complaints against employers. *Id.,* 350 U.S. at 128–31, 76 U.S. at 234–35. Finally, in *Reed v. Steamship Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), the Court held that a longshore person employed by a stevedore company could bring an action directly against the vessel even when the employee's injuries occurred on the vessel while the stevedore company owned and operated the vessel under a bareboat charter.

### B. *The 1972 Amendments*

In 1972, Congress overhauled the LHWCA. The 1972 Amendments sought to "raise the amount of compensation available under the LHWCA, to extend coverage of the Act to include certain contiguous land areas, to eliminate the longshoremen's strict liability seaworthiness remedy against shipowner, to eliminate the shipowner's claim for indemnification from stevedores, and to promulgate certain administrative reforms." *Director, OWCPU v. Perini North River Associates,* 459 U.S. 297, 313, 103 S.Ct. 634, 645, 74 L.Ed.2d 465 (1983). In addition to expanding landward the employees covered by the Act in § 902(3), the existing exclusive worker compensation remedy language of § 905 was placed in subsection (a) and subsection (b) was added.

### 1. Landward Expansion Under the "Situs" and "Status" Tests

■ As noted, pre–1972, employees were covered by the Act only if they were on the sea-side of the gangplank when the accident occurred. In order to correct this inequity, Congress expanded the situs coverage of the Act landward under § 903(a) to include "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling or building a vessel." 33 U.S.C. § 903(a) (1990 ed., and West Supp.1992). In addition, the 1972 Amendment in § 902(3) defined employee to mean "any person engaged in maritime employment, *including* any longshore-

man or other person engaged in longshoring operation, and any harbor worker including ship repairman, shipbuilder, and shipbreaker." 33 U.S.A. § 902(3) (1970 ed. and Supp. 1973) (emphasis supplied). This language created a new "status" test that supplemented the old "situs" test. *See Herb's Welding, Inc. v. Gray,* 470 U.S. 414, 415–16, 105 S.Ct. 1421, 1423, 84 L.Ed.2d 406 (1984); *Caputo,* 432 U.S. at 264–65, 97 S.Ct. at 2357; *Triguero v. Consolidated Rail Corp.,* 932 F.2d 95, 99 (2d Cir.1991).

The expanded coverage of the 1972 LHWCA extends to all persons in maritime employment except those individuals enumerated in 902(3)(A)–(H)—a list which Congress has explicitly admonished the courts not to read expansively. U.S.Code Cong & Admin.News 1984, pp. 2734, 2736–2740. Although, arguably, Guilles as a relief cook could be considered a crew member subject to the Jones Act and not the LHWCA, *see McDermott International, Inc. v. Wilander,* 498 U.S. 337, 344, 111 S.Ct. 807, 812, 112 L.Ed.2d 866 (1991) ("A cook and a steward are seamen in the sense of maritime law, although they have particular duties assigned to them") and *compare* 902(3)(G) ("the term 'employee' ... does not include ... (G) a master or member of a crew of any vessel...."), the parties have expressly stipulated that Guilles is not a crew member but is a harbor worker under the LHWCA.

Some Fifth Circuit precedent would suggest that an employee who is not assigned permanently to a particular vessel or who does not work substantially on one vessel is not a seaman under the Jones Act. *See, e.g., Barrett v. Chevron U.S.A., Inc.,* 781 F.2d 1067, 1072–74 (5th Cir.1986); *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir.1959). The Fifth Circuit in *Bach v. Trident Steamship Co.,* 920 F.2d 322, *vacated and remanded,* —— U.S. ——, 111 S.Ct. 2253, 114 L.Ed.2d 706, *aff'd,* 947 F.2d 1290 (5th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1996, 118 L.Ed.2d 592 (1992); however, has held that an employee who does work on various vessels which are commonly owned can qualify as a seaman under the Jones Act. Because Guilles is a maritime worker covered by the terms of the LHWCA, this Court

has no compelling reason to decide whether a relief cook is a seaman under the Jones Act or to reject the stipulation of the parties that Guilles is covered by the LHWCA.

There is some indication in the legislative history of the 1972 Amendments that suggests that Congress intended in the 1972 Amendments to the Act to cover only longshore persons involved in stevedoring services and as ship builders, repairers and breakers. House Report No. 92–1441 (1972), U.S.Code Cong. & Admin.News 1972, p. 4698 states, in relevant part, for example, that: "The Committee does not intend to cover employees who are not engaged in loading, unloading, repairing, or building a vessel, *just because they are injured in an area adjoining navigable waters used for that activity."* (emphasis supplied). *See* S.Rep. No. 92–1125, at 1 (1972); H.Rep. No. 92–1441 (1972), U.S.Code Cong & Admin.News 1972, p. 4708. The Supreme Court, however, has addressed the issue of Congress' intent and the language of the House Report quoted above and concluded that it does not support the proposition that the 1972 Amendments to the LHWCA intended to limit or did limit coverage only to such longshore persons. *Director, OWCPU v. Perini North River Associates,* 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983) (hereinafter *Perini* ).

In *Perini,* a worker in charge of a cargo barge used to unload materials for insertion in the foundation of a sewage treatment plan extending over the Hudson river in Manhattan was giving instructions to a crane operator when the crane line snapped and struck him. The worker sought coverage under the Act. Both the Administrative Law Judge and the Review Board denied coverage and the Second Circuit affirmed.

The Supreme Court reversed. Reviewing the language of the House Report previously quoted, the Court concluded that Congress did not intend to withdraw coverage for those employees who were covered before 1972 under the Act, *see* 459 U.S. at 315–18, 103 S.Ct. at 646–47, but merely intended to "extend coverage to additional workers," *see* 459 U.S. at 316, 103 S.Ct. at 647, by adding a status requirement which "define[d] the scope of the extended landward coverage." *Id.,* 459 U.S. at 317–18, 103 S.Ct. at 647. Underscoring that the Act "must be liberally construed," *see* 459 U.S. at 315, 103 S.Ct. at 646, the Court went on to hold that non-longshore persons who were nevertheless maritime employees enjoyed coverage under the Act when they suffered injury on navigable waters. If a maritime employee is injured on land, however, the employee must be a longshore person to be covered by the Act but maritime employees who are not longshore persons are covered by the Act if injured on navigable waters and are not otherwise excluded by § 902(3) of the Act. This Court concludes, therefore, like the parties, that shoregang harbor workers like Guilles who are injured from a gangplank, are covered by the LHWCA.

### 2. Application of Section 905(b)

■■ Sea–Land insists that in order to give meaning to the "third party" wording of § 905(b)'s first sentence, this Court must interpret the phrase to mean that Guilles as a harbor worker who is not a longshore person can not sue a vessel owner who is also his employer. Sea–Land argues that since the intent of Congress in § 905(b) was to codify and set limits to the Supreme Court decisions that had created negligence causes of actions for longshore persons, § 905(b) should be limited to longshore persons and not expanded to harbor workers.[4]

---

4. Sea–Land maintains that reference to 33 U.S.C. § 933(a) in the first sentence of § 905(b) is further proof that Congress did not intend to permit employers who are vessel owners to be sued. The purpose of § 933(a) belies Sea–Land's claim. Section 933(a) states that "[i]f on account of liability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable for damages, he need not elect whether to receive such compen-

sation or to recover damages against such third person."

Section 933(b) does not address the question of who is permitted to sue or be sued under § 905(b) but merely insures that an employee is able to obtain worker compensation while retaining the right to seek redress from those who by their negligence caused the injury. *See Bloomer v. Liberty Mut. Ins. Co.,* 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980) (§ 933(a) was amended in 1959 to overrule prior case law

Section 905(b)'s "third party" language, however, gave rise to considerable litigation about whether longshore persons doing stevedoring work could sue their employers who were vessel owners. Vessel-owner employers argued that the language of the Act precluded employees from bringing a direct negligence cause of action against them. The issue was laid to rest in *Jones Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 532, 103 S.Ct. 2541, 2548, 76 L.Ed.2d 768 (1983), where the Supreme Court held that an employee could bring a direct action against an employer who was also a vessel owner despite the "third party" language of § 905(b).[5] The Court reasoned that if Congress intended to bar such suits, it would not have needed the second sentence of § 905(b) which specifically contemplates the situation that some of the persons covered by the Act and by the first sentence of § 905(b) are involved in stevedoring services and are employed by the vessel: "If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services."

Despite the clear language of the statute, well settled principles of statutory construction and relevant Supreme Court case law, Sea–Land would still have this court ignore the beginning words of § 905(b), i.e. 'In the event of injury to a person covered under this chapter caused by the negligence of the vessel, then such person, . . ., may bring an action," and hold that § 905(b) permits only longshore persons, and not other harbor workers covered by the Act, to bring negligence suits against their employers who are vessel owners. Sea–Land argues that it is the second sentence of § 905(b) which permits a court to infer that longshore persons

are exempted from the third party language of the first sentence but maintains that to give meaning to the words "third party" in the first sentence, all other persons covered by the Act must not be permitted to bring suit against their vessel owner employer. Sea–Land's interpretation is simply disingenuous.

This Court is guided in its analysis by principles of statutory interpretation recently summarized by the Second Circuit in *United States v. Koehler*, 973 F.2d 132, 134 (2d Cir.1992):

> The "starting point in every case involving construction of a statute is the language itself." When we find the terms of the statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances.
>
> \*       \*       \*       \*       \*       \*
>
> As the [Supreme Court] recently summarized: "The strong presumption" that the plain language of the statute expresses congressional intent is rebutted only in "rare and exceptional circumstances," when a contrary legislative intent is clearly expressed.
>
> \*       \*       \*       \*       \*       \*
>
> Therefore, we look to the legislative theory to determine only whether there is "clearly expressed legislative intention contrary to the statutory language." Further, "only the most extraordinary showing" of a contrary intention from the legislative theory would justify interpretive departure from a statute's plain meaning.

Citations omitted.

The first sentence of § 905(b) is unambiguous that all persons "covered under this

---

holding that an employee electing to receive compensation from an employer lost the right to sue a third person for negligence). Therefore, the authority to "bring an action against such vessel as a third party in accordance with the provisions of section 933" in the first sentence of § 905(b) can only refer to authority to both collect workers compensation and seek legal redress and does not limit the right to bring negligence suits contained in § 905(b).

5. Historically, suits under maritime law involve in rem actions against vessels as third parties.

*See, e.g., Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). It is therefore not surprising that Congress used the term "third party" to describe a suit against a vessel. Fully aware of the historical context of the term, courts have interpreted this third party language as being interchangeable with vessel owner. *See, e.g. Napoli v. Hellenic Lines, Ltd.*, 536 F.2d 505 (2d Cir.1976) ("third party" language of § 905(b)'s first sentence allows "direct suit" against the employer 'qua' vessel).

chapter" are entitled to recover damages by reason of a vessel's negligence. By its own terms and by Sea–Land's own stipulation that plaintiff is entitled to worker compensation under § 904, Guilles can maintain a cause of action for negligence under § 905(b) because he is a person covered by this chapter. As stated in *Fanoli v. Sea–Land Services, Inc.*, 251 N.J.Super. 443, 598 A.2d 911, 914 (A.D.1991): "Plaintiff is acknowledgedly such a person; defendant has made substantial payments to him under the Act. Had Congress intended to mean longshoremen rather than persons covered by the Act, it could easily have said so."

This Court has not been able to unearth any authority for Sea–Land's proposition that a person in Guilles position should be covered under the compensation component of § 904 but not under the negligence component of § 905. There is only one class of employees that is entitled to obtain worker compensation under § 904 but is precluded under the third sentence of § 905(b) from bringing an action against a vessel owner who is an employer: those "employed to provide shipbuilding, repairing or breaking services. . . ." 33 U.S.C.A. § 905(b) (1990 ed., and West Supp.1992).

To the extent that this one class of employees is precluded from suing a vessel owner/employer for negligence, that class is excluded by explicit statutory mandate, not, as Sea–Land is forced to argue, by statutory implication in two words, "third party". There being no evidence, statutory or otherwise, that under the LHWCA other employees may be covered for purposes of compensation but not for purposes of filing a negligence action, this Court concludes that Guilles is covered by the Act and is permitted by § 905(b) to sue his employer who is also a vessel owner.

■ The essence of Sea–Land's argument is that the statutory scheme of the LHWCA is violated when covered employees are permitted to sue their employers. Yet, Sea–Land must accept the Supreme Court's decision in *Jones* not only because it is binding precedent but also because there is no other logical way to account for the inclusion of the second sentence in § 905(b). Sea–Land's argument really rests on a policy consideration that to allow harbor workers to bring actions against the vessel owner/employer would place harbor workers in a better position than longshore persons who are precluded from bringing an action directly against their employer when the injury was caused by the negligence of co-workers. Sea–Land contends that such result could not have been sought by Congress and argues that in order to avoid it, this Court must hold that 905(b)'s second sentence is the general rule, i.e., only longshore persons can sue the vessels who employ them, the first sentence is the exception, every one else can not the vessel if it is an employer, and the third sentence is a further affirmation of the exception in the first sentence—shipbuilders, repairers and breakers can not sue a vessel if it employs them. This Court disagrees.

The natural and logical reading of § 905(b) is that the first sentence is the general rule and that sentences two and three are the exceptions. It is beyond peradventure that the second sentence of § 905(b) was created to protect vessel owner employers from liability when the injury suffered by a stevedoring employee was caused by the negligence of a fellow co-worker. *See, e.g., Smith v. Eastern Seaboard Pile Driving, Inc.*, 604 F.2d 789, 794 (2d Cir.1979). This is clearly an exception to the general rule stated by the first sentence, namely, that a person covered by the LHWCA is entitled to bring a cause of action for negligence against anyone, including his own employer if that employer is the vessel owner. Read together with the third sentence—which takes away the negligence cause of action from a specified class of employees—one cannot but conclude that the second and third sentences are exceptions to the first.

Unfair as it may seem to Sea–Land that some harbor workers covered by the Act may be able to assert negligence causes of action under circumstances that would preclude longshore employees from filing a lawsuit, such protestation is a policy argument that is better addressed by Congress, than by the courts.

## CONCLUSION

For the reasons set forth above, Guilles as a harbor worker who is not a longshore person is entitled to maintain an action under § 905(b) of the LHWCA. As the parties have stipulated both to the negligence of the vessel owner, the damages suffered by Guilles, and, by letter dated April 14, 1993 to the Court seeking an amendment of the original order, the amount of any pre-judgment interest, this Court orders the entry of judgment in plaintiff's favor in the amount of $33,916.35. The Clerk of the Court is directed to enter judgment in accordance with this Order.

**SO ORDERED.**