**Jacinto G. GUILLES, Plaintiff–Appellee,**

v.

**SEA–LAND SERVICE, INC., Defendant–Appellant.**

**No. 404, Docket 93–7432.**

United States Court of Appeals, Second Circuit.

Argued Oct. 7, 1993.

Decided Dec. 22, 1993.

Joseph T. Stearns, Kenny & Stearns, New York City, for defendant-appellant.

Faith O'Malley, Tabak & Mellusi, New York City (Jacob Shisha, Tabak & Mellusi, New York City, of counsel), for plaintiff-appellee.

Before: PIERCE, MINER and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant Sea–Land Service, Inc. ("Sea–Land") appeals from a judgment of the United States District Court for the Southern District of New York (Sotomayor, J.), entering judgment after a bench trial in favor of plaintiff-appellee Jacinto G. Guilles

in the amount of $33,916.35 plus interest. 820 F.Supp. 744. The parties stipulated to most of the facts before the district court, leaving open only the question of whether Guilles, a relief cook employed by Sea–Land, could maintain an action against Sea–Land pursuant to § 905(b) of the Longshore and Harbor Worker's Compensation Act ("LHWCA," the "Act"), 33 U.S.C. § 901, *et seq.* (1988 & Supp. IV 1992), to recover damages caused by Sea–Land's stipulated negligence in its capacity as a "vessel."

The district court found that the plain meaning of 33 U.S.C. § 905(b) (1988) ("§ 905(b)") led to the conclusion that Guilles was covered by that section, and was entitled to maintain an action for negligence even where Sea–Land was both employer and vessel-owner. For the reasons stated below, we agree with the district court's straight-forward reading of the contested statute, and affirm the judgment of the district court.

## BACKGROUND

There is no dispute as to the relevant facts of this case. On April 22, 1988, Guilles was a shoregang employee working as a relief cook for Sea–Land when he was injured attempting to ascend the main gangplank of a vessel owned and operated by Sea–Land. That accident formed the basis of the present action, in which Guilles originally sought damages as a seaman under the Jones Act, 46 U.S.C.App. § 688, *et seq.* (1988 & Supp. IV 1992), and in the alternative claimed the vessel was negligent and that he was entitled to recover under § 905(b) of the LHWCA. This action was originally brought in the United States District Court for the Southern District before Judge Sprizzo.

By stipulation, the parties agreed that Guilles was not a seaman under the Jones Act but that he was entitled, as a harbor worker, to workers compensation benefits pursuant to 33 U.S.C. § 904. Guilles subsequently received those benefits. The stipulation did not, however, settle Guilles's claim that he was entitled to damages for negligence under § 905(b).

Following Judge Sprizzo's denial of Sea–Land's motion for summary judgment as it

related to the § 905(b) claim, the case was transferred to District Judge Sotomayor, who denied an identical summary judgment motion. Following a two-day bench trial on February 1–2, 1993, the parties stipulated to the following facts and conclusions of law, which were adopted in their entirety by the district court and which are reproduced here in their original form:

1. On April 22, 1988, Jacinto G. Guilles was employed by defendant Sea–Land as a member of the shoregang and, as such, was covered for purposes of entitlement to compensation benefits of the LHWCA, both by virtue of his status and situs of injury. *Northeast Marine Terminal Co., Inc. v. Caputo*, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977); *Director, OWCP v. Perini North River Assoc.*, 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983).

2. Plaintiff did not engage in providing stevedoring services to the vessel, ship-building, repairing or breaking services.

3. Plaintiff, on April 22, 1988, sustained "an injury", which occurred as a result of the "negligence of the vessel" within the meaning of § 905(b) of the Act, on the main gangway or so-called "accommodation ladder" of the vessel SEA LAND INTEGRITY.

4. As a result of said injury, plaintiff sustained damages in the amount of $20,000.00 over and above the $10,533.78 he received in worker compensation payments, and $3,382.57 he received under the LHWCA as compensation benefits for his medical care and treatment. Thus, the total amount of damages suffered by Guilles is $33,916.35, of which $13,916.35 is subject to a compensation lien.

5. This Court has jurisdiction over plaintiff's claims, pursuant to 28 U.S.C. § 1333, because the injury occurred on the navigable waters of the United States. *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 207, 92 S.Ct. 418, 422, 30 L.Ed.2d 383 (1971).

The parties did not stipulate as to whether Guilles was entitled to bring suit against Sea–Land for negligence under § 905(b). This was the question resolved by the district court after the bench trial. In a thorough 22–page unpublished opinion rendered on March 30, 1993, the district court rejected Sea–Land's arguments that Guilles, a non-longshore person, was not entitled to bring an action against Sea–Land due to Sea–Land's status as both employer and vessel-owner. The court found that the legislative history and basic principles of statutory interpretation led to the conclusion that Guilles had a cause of action against Sea–Land. Accordingly, the district court entered judgment in favor of Guilles in the amount of $33,916.35, plus interest on $20,000 of that amount from the date of the accident.

Sea–Land now appeals, making essentially the same arguments before this Court as made before the district court. For the reasons stated below, we affirm.

### DISCUSSION

■ This case presents an issue of first impression over the interpretation of § 905(b), which governs the remedies for negligence available against vessel owners for those maritime workers covered under the LHWCA. The question is whether a harborworker like Guilles is entitled to recover in negligence under § 905(b) against a vessel-owner like Sea–Land that is also the employer of the harborworker.

A brief understanding of the historical context of the section at issue is necessary for a full discussion of the arguments. Congress passed the LHWCA in 1927 as a response to Supreme Court decisions limiting the ability of states to provide worker compensation protection to maritime workers. *See, e.g., Washington v. W.C. Dawson & Co.*, 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646 (1924); *Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920); *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). The Act created a worker compensation scheme that provided coverage to injured employees with-

out regard to employer liability, *see* 33 U.S.C. § 904, but that also was apparently intended to be an exclusive remedy, *see* 33 U.S.C. § 905(a) (1988) (stating that "[t]he liability of an employer prescribed in section 904 of this title shall be exclusive"). *But see Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 530–31, 103 S.Ct. 2541, 2546, 76 L.Ed.2d 768 (1983) (holding that under 1972 amendments § 904 worker compensation is not exclusive remedy under LHWCA where employer also happens to be vessel-owner).

In 1972, Congress substantially amended the Act to "raise the amount of compensation available under the LHWCA, to extend coverage of the Act to include certain contiguous land areas, to eliminate the longshoremen's strict-liability seaworthiness remedy against shipowners, to eliminate shipowner's claims for indemnification from stevedores, and to promulgate certain administrative reforms." *Director, OWCP v. Perini North River Associates,* 459 U.S. 297, 313, 103 S.Ct. 634, 645 (1983) (citing to various House and Senate legislative reports). One of the changes, the one relevant to this inquiry, re-drafted § 905 to put the existing exclusive worker compensation remedy language quoted above in a newly-created subsection (a) and added a subsection (b). Section 905(b) is the section at issue in this case.

In its present form, § 905(b) states substantially as follows:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed to provide shipbuilding, repairing, or breaking services and such person's em-

ployer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer.... The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

33 U.S.C. § 905(b).

The issue that we must resolve is whether Guilles is afforded a cause of action under § 905(b). The parties have narrowed this issue considerably by stipulating to many of the elements of the statute, specifically that: Guilles is covered by the LHWCA for purposes of entitlement to compensation benefits; Guilles did not engage in stevedoring, shipbuilding, repairing or breaking services; and Guilles suffered an injury within the meaning of the Act. The parties have also stipulated that Guilles is not a crew member subject to the Jones Act but is instead covered by the LHWCA. We accept, as the district court did, the stipulations of the parties, and see no reason to consider whether Guilles is a Jones Act seaman. We note that there is no question that Guilles is covered under the LHWCA. *See Perini,* 459 U.S. at 324, 103 S.Ct. at 650 (holding that a worker injured on "actual navigable waters" in the course of employment is covered under the LHWCA).

What is left for us to determine is whether Sea–Land is liable to Guilles where Sea–Land was both the owner of the vessel and Guilles's employer. Because the parties have stipulated out of the case virtually all factual questions, we are presented with a clear issue of statutory interpretation for § 905(b). In reviewing the statute, we are mindful that the "'starting point in every case involving construction of a statute is the language itself.'" *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986) (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1934, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)); *United States v. Koehler,* 973 F.2d

132, 134 (2d Cir.1992). We will only look to the legislative history of the statute to explain its meaning if there is a clearly expressed legislative intention contrary to our interpretation of the language. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987).

Section 905(b) is more easily analyzed if taken from its pristine but complex congressionally drafted form and broken down into its relevant parts. Simplifying the language for an easier understanding, the relevant sections of § 905(b) can be distilled into the following three parts:

(1) The first sentence ("first sentence") states that an "injury to a person covered under this chapter caused by the negligence of a vessel" gives rise to "an action against such vessel as a third party."

(2) The second sentence ("second sentence") essentially prevents an action by a stevedore employed by a vessel against the employer-vessel if the injury-causing event was itself caused by the act of another stevedore.

(3) The third sentence ("third sentence") essentially prevents an action by an injured person against the vessel if: (a) the person injured was employed to provide "shipbuilding, repairing, or breaking services"; and (b) the employer of the injured person was also the owner of the vessel.

We note that, as originally drafted, the third sentence essentially did for those involved in repairing or ship building what the second does for stevedores/longshore persons, in that the clause prevented recovery against the employer-vessel if the injury was caused by another repair person or shipbuilder. That sentence was amended in 1984 into its present form, barring recovery against the employer-vessel altogether.

The district court found that the clear import of the statute was that the first sentence establishes a general cause of action for those covered by the LHWCA, and that the second and third sentences are exceptions to the general rule. This is a clear and sensible reading of the statute, supported by the legislative history, and one that we affirm. Sea–Land's proposed interpretation of § 905(b), discussed at some length below, is not without some logic, but it relies on a tortured and twisted contortion of the statute in order to reach the result Sea–Land desires.

Sea–Land contends that the plain meaning of the statute prevents it from being sued by a non-stevedore/longshore person where it is both an employer and a vessel owner. Sea–Land insists that the statutory language in the first sentence of 905(b), stating that an action may be brought "against [the negligent] vessel as a third party," prevents suits against vessels that are also employers, since the vessel would then not be a "third party." It essentially contends that this language is a restriction, effectively barring any suits against employer-vessels by expressly allowing suits only against vessels as third parties.

Most of Sea–Land's argument rests on the assumption that the term "as a third party" is the key phrase in the first sentence. Sea–Land criticizes the district court for finding that the phrase merely means that the vessel can be sued apart from its capacity as an employer (i.e., that the phrase really means "as if it were a third party").

Sea–Land further asserts that it is the second sentence of § 905(b)—not, as the district court found, the general language in the first sentence—that confers the right of a LHWCA worker to sue his employer for negligence in its vessel capacity. The second sentence states that if the injured person was employed by the vessel as a stevedore, he cannot sue the vessel for injuries caused by the negligence of another stevedore. According to Sea–Land, it is this sentence that gives employees—limited to stevedores (i.e., longshore persons)—the right to sue their vessels/employer. Sea–Land further points out that the third sentence as originally drafted did the same for shipbuilders and repair personnel, although the statute as now amended expressly prevents those employees from suing an employer-vessel for negligence.

Thus, according to Sea–Land, Guilles is not covered by the statute. Guilles has stip-

ulated that he is not a longshore person, shipbuilder, or repair person, which means that he was not covered under either of the two sentences that Sea–Land asserts grant (at least originally, in the case of shipbuilders and repair persons) a right of action against an employer-vessel. Therefore, under this analysis, because Sea–Land is not a "third party," it cannot be liable to Guilles, a harborworker.

Sea–Land's interpretation of the second sentence of § 905(b), however, is foreclosed by the Supreme Court's reasoning in *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 103 S.Ct. 2541 (1983). In *Jones & Laughlin*, the Court ruled that a longshore person injured in the course of his employment for an employer-vessel could recover from the employer for negligence. *See id.* 462 U.S. at 532, 103 S.Ct. at 2548. The Court was considering an argument that § 905(a), which appeared to make workers compensation the "exclusive" remedy for injured maritime employees, foreclosed recovery, and held that this interpretation was undermined by the plain language of § 905(b). *See id.* 462 U.S. at 529–30, 103 S.Ct. at 2546. The Court started with the first sentence, finding that a maritime worker was not only guaranteed the statutory compensation from his employer, but also empowered to recover tort damages for negligence by the vessel. *See id.* 462 U.S. at 530, 103 S.Ct. at 2547. Moreover, the second sentence "makes it clear that such a separate action is authorized against the vessel even when there is no independent stevedore and the longshoreman is employed directly by the vessel owner." *Id.* The Court explained that if § 905(a) "had been intended to bar all negligence suits against owner-employers, there would have been no need to put an additional sentence in [§ 905(b)] barring suits against owner-employers for injuries caused by fellow servants." *Id.* 462 U.S. at 530–31, 103 S.Ct. at 2547.

The important facet of the Supreme Court's reasoning for the instant case is that last point. As the Court points out, the second sentence of § 905(b) demonstrates that Congress expected that a right to sue an employer-vessel *already existed.* Otherwise,

there would be no need to restrict recovery where the injury was caused by another employee. Contrary to Sea–Land's interpretation, that second sentence is cast in terms of limitation, not extension. Quoting directly from the statute again, the sentence states the following: "If *such person* was employed by the vessel to provide stevedoring services, *no such action shall be permitted* if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel." 33 U.S.C. § 905(b) (emphasis added). The sentence evinces an expectation that "such person," referring to the "person covered under this chapter," already has a right of action, and places a limitation where the person was a stevedore injured by another stevedore. The original version of the statute placed a similar limitation on repair personnel and shipbuilders. As originally written, therefore, the second and third sentences placed limitations on what was expected to be a general extension of a right of action to those maritime employees covered by LHWCA.

The fact that Congress amended the third sentence in 1984 further bolsters this interpretation. The 1984 change now in effect, preventing in all circumstances shipbuilders and repair personnel from recovering for negligence from an employer-vessel, shows that Congress knew how to preclude a class of employees from being able to sue an employer-vessel if it chose to do so. By stipulation, it is agreed that Guilles is not among that class, and that class to which he belongs, harborworkers, is not specifically precluded from the cause of action.

Sea–Land's entire argument is founded on an expanded reading of the words "as a third party" and a discredited and illogical understanding of the second sentence of § 5(b). The shortest distance between two points, however, is a straight line, and the clearest and fairest reading that one can give to this statute is to start at the beginning and work one's way down. Section 905(b) plainly sets out in the first sentence a general right to sue when there is "injury to a person covered under this chapter caused by the negligence of a vessel." The latter two sentences are limitations on this general rule, both of which

**387**

were originally supposed to prevent employees who were injured by other employees from suing the employer-vessel.

The district court interpreted the statute in the same way, stating:

> The natural and logical reading of § 905(b) is that the first sentence is the general rule and that sentences two and three are the exceptions. It is beyond peradventure that the second sentence of § 905(b) was created to protect vessel owner employers from liability when the injury suffered by a stevedoring employee was caused by the negligence of a fellow co-worker.... This is clearly an exception to the general rule stated by the first sentence, namely, that a person covered by the LHWCA is entitled to bring a cause of action for negligence against anyone, including his own employer if that employer is the vessel owner. Read together with the third sentence— which takes away the negligence cause of action from a specified class of employees—one cannot but conclude that the second and third sentences are exceptions to the first.

Moreover, although there are no decisions explicitly relying on this analysis as a basis for a holding, several courts reviewing the statute have observed that the cause of action in § 905(b) is available to non-longshore persons suing an employer-vessel. *See Levene v. Pintail Enterprises, Inc.*, 943 F.2d 528, 532 (5th Cir.1991) (noting that there is nothing in statutory language which suggests that a § 905(b) cause of action is limited to workers performing stevedoring operations), *cert. denied,* — U.S. ——, 112 S.Ct. 2274, 119 L.Ed.2d 201 (1992); *Presley v. Healy Tibbits Construction Co.*, 646 F.Supp. 203, 207 (D.Md.1986) (stating that second and third sentences of § 905(b) limit right granted by the first sentence); *Fanoli v. Sea– Land Services, Inc.*, 251 N.J.Super. 443, 598 A.2d 911, 914 (1991) (observing that the language of § 905(b) does not support distinction between longshore persons and other maritime employees).

Although we need not resort to the legislative history of § 905(b), because we find that the statute is plain on its face, we are comforted by the evidence found in various fragments of the history that indicate our reading is consistent with congressional intent. For example, the legislative history of the 1972 amendments indicates intent to treat all maritime workers covered by the Act equally. As stated in a House report:

> The Committee rejected the proposal, originally advanced by the industry, that vessels should be treated as joint employers of longshoremen or other persons covered under this Act working on board such vessels.... The Committee believes that where a longshoreman or other worker covered under this Act is injured through the fault of the vessel, the vessel should be liable for damages....

H.R.Rep. No. 1441, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 4698, 4702; *see also* S.Rep. No. 81, 97th Cong., 1st Sess., at 31 (1981) (reviewing the 1972 amendments, finding that except for the limitations in the second and third sentences, "an employer-vessel would not be relieved of liability for other, 'owner' occasioned negligence"). At the very least, these excerpts show that there is no clearly expressed legislative intent contrary to our reading of the plain language of § 905(b). *See Cardoza–Fonseca,* 480 U.S. at 432 n. 12, 107 S.Ct. at 1213 n. 12.

For these reasons, we hold that those maritime workers covered by the LHWCA have under § 905(b) a cause of action for negligence against vessel owners even if the vessel is owned by the worker's employer, subject to the limitations in the second and third sentences of the statute. Because it is stipulated that Guilles is covered by the LHWCA, and that he is not subject to the restrictions of the second and third sentences of the statute, we find that he is entitled to recover the damages stipulated. Accordingly, we affirm the judgment of the district court awarding damages to Guilles.

## CONCLUSION

We have considered all of Sea–Land's arguments, and find them to be unpersuasive. For these reasons, we affirm the judgment of the district court.